UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LUCIANO SCHIPELLITI,<br><br>Defendant | ) Criminal No.  26cr10068<br>) <br>) Violation:<br>) <br>) Count One: Wire Fraud<br>) (18 U.S.C. § 1343)<br>) <br>) Forfeiture Allegation:<br>) (18 U.S.C. § 981(a)(1)(C) and<br>) 28 U.S.C. § 2461(c))<br>) |

INFORMATION

At all times relevant to this Information:

General Allegations

1.     Defendant LUCIANO SCHIPELLITI ("SCHIPELLITI") lived in Massachusetts.

2.     Individual 1 and Individual 2 were a married couple and lived in Massachusetts. Individual 2 ran a large Massachusetts real estate business ("Company A").

3.     Superstars Investment Group, LLC ("Superstars") was a New Hampshire limited liability company that was registered on or about August 2, 2018.  According to its certificate of organization, Superstars managed investment funds.  SCHIPELLITI was Superstars' registered agent and manager.  In or around August 2018, SCHIPELLITI launched the Superstars Fund, which purported to be an "Investment Fund."

4.     TTM Investment Group, LLC ("TTM") was a Massachusetts limited liability company that was registered on or about February 20, 2021.  According to its certificate of organization, TTM operated as an investment fund.  SCHIPELLITI was TTM's resident agent and manager.  In or around February 2021, SCHIPELLITI launched the TTM Fund, which purported to be an "Investment Fund." According to its Operating Agreement, TTM's stated purpose was to

1

"to purchase, own, and develop real estate as well as invest in Cryptocurrency, Stocks, Bonds, and other Securities."

The Scheme and Artifice to Defraud

5.     In or around August 2018, SCHIPELLITI and Individual 1 raised about $277,000 for the Superstars Fund from investors, including employees at Company A, and friends of Individual 1 and Individual 2.

6.     SCHIPELLITI managed the Superstars Fund and controlled its investment decisions.

7.     By in or around June 2019, through a series of bad investments, SCHIPELLITI lost all of the money in the Superstars Fund.  SCHIPELLITI did not tell any of the investors that he had lost the money.

8.     In or around August 2020, SCHIPELLITI met with Individual 1 to discuss the Superstars Fund.  SCHIPELLITI lied to Individual 1 and told Individual 1 that SCHIPELLITI had only lost roughly $100,000 of the money invested in the Superstars Fund.  Individual 1 instructed SCHIPELLITI to invest in certain cryptocurrencies.  Despite the fact that there was no money in the Superstars Fund, SCHIPELLITI agreed and told Individual 1 that he would invest in the five recommended cryptocurrencies.

9.     By in or around November 2020, the value of the five cryptocurrencies had increased.  Because Individual 1 believed that SCHIPELLITI had actually invested in the cryptocurrencies, Individual 1 believed that the value of the Superstars Fund had also increased. Individual 1 asked SCHIPELLITI to send a monthly newsletter to the investors updating them on the fund's performance.

10.    Beginning in or around November 2020 and continuing through in or around September 2021, SCHIPELLITI sent the investors monthly email updates concerning the Superstars Fund.  In each of these emails, SCHIPELLITI lied about the performance of the Superstars Fund and falsely claimed that the investors were making a profit on their investments.

11.    For example, on or about November 16, 2020, SCHIPELITTI wrote: "I am glad to report that we are UP approximately 13% from our original investment and we are expecting much larger growth from here on out."

12.    On or about February 17, 2021, SCHIPELLITI wrote: "Roughly 6-8 months ago, the fund was hovering around **$150,000** in total value.  I am proud to announce that just a week ago, we broke over the $1 Million mark and are now sitting at **$1,073,675** in value **(up 286.89%)**. We are confident that this will be a great year" (emphasis in original).  That information was false.

13.    SCHIPELLITI then wrote: "With all that said, [Individual 1] and I have **decided to open up a second crypto fund** to allow everyone here in our office to have the opportunity to get into crypto… there is no limit of how much each investor can deposit" (emphasis in original).

14.    On February 20, 2021, SCHIPELLITI sent a follow-up email soliciting investment. He explained that Individual 1 and SCHIPELLITI would be closing investment on February 24, 2021.  SCHIPELLITI falsely noted that the Superstars Fund was "up 318.95% to $1,162,655 (+100k in the past three days)."

15.    Shortly thereafter, SCHIPELLITI launched the TTM Fund.

16.    Many of the investors in the TTM Fund were also investors in the Superstars Fund. At the time of their investment in the TTM Fund, because of SCHIPELLITI's false statements, the investors believed that the Superstars Fund had been successful.

17.    In all, SCHIPELLITI and Individual 1 raised $350,000 for the TTM Fund.

3

18.     As with the Superstars Fund, SCHIPELLITI managed the TTM Fund and controlled its investment decisions.  By September 2021, SCHIPELLITI lost all the money in the TTM fund.  SCHIPELLITI lost most of the money investing in cryptocurrency.  SCHIPELLITI also used some of the money in a manner inconsistent with the terms of TTM's Operating Agreement, which required SCHIPELLITI to invest in "Cryptocurrency, Stocks, Bonds, and other Securities."

19.     At that time, SCHIPELLITI admitted that he had lost all the money in both the Superstars Fund and the TTM Fund.  SCHIPELLITI sent a letter to all of the investors in both funds explaining that he had lost all of their investments.

## COUNT ONE
### Wire Fraud
### (18 U.S.C. § 1343)

The United States Attorney charges:

20.     The United States re-alleges and incorporates by reference paragraphs 1 to 19 of this Information.

21.     Between in or about February 2021 and September 2021, in the District of Massachusetts and elsewhere, the defendant,

### LUCIANO SCHIPELLITI,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | February 17, 2021 | Email to investors soliciting investment in the TTM Fund. |

All in violation of Title 18, United State Code, Section 1343.

FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

22.    Upon conviction of the offense in violation of Title 18, United States Code, Section 1343, set forth in Count One, the defendant,

LUCIANO SCHIPELLITI,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.  The property to be forfeited includes, but is not limited to, the following asset:

    a.  $350,000 to be entered in the form of a forfeiture money judgment.

23.    If any of the property described in Paragraph 22, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 22 above.

6

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

LEAH B. FOLEY
UNITED STATES ATTORNEY

By:    */s/ Benjamin A. Saltzman*
BENJAMIN A. SALTZMAN
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

DATE:  March 17, 2026